UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW CATANZARO and
MICHAEL GARRISON,                                  No. 08-11173

            Plaintiffs,                            District Judge Thomas L. Ludington

v.                                                 Magistrate Judge R. Steven Whalen

MICHIGAN DEPT. OF CORRECTIONS,
et.al.,

            Defendants.
_____ /

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Michael Garrison's "Rule 65 Motion for a Temporary

Restraining Order and Preliminary Injunction Concerning Major Misconduct and Denial

of Effective Medication" [Docket #14], which has been referred for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons that follow, I

recommend that the motion be DENIED.

## I.   BACKGROUND

Michael Garrison and Matthew Catanzaro, both prison inmates in the custody of

the Michigan Department of Corrections (MDOC), have filed a joint *pro se* civil rights

complaint pursuant to 42 U.S.C. § 1983, naming some 22 defendants.[1]  Part of Plaintiff

Garrison's complaint also raises an issue under the Religious Land Use and

Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et.seq*.  Mr. Garrison

alleges that on several occasions, he was in the prison yard without a shirt when

---

        [1] Plaintiff Catanzaro has been granted IFP status.  Plaintiff Garrison, who has paid
his share of the filing fee, is not proceeding IFP.

-1-

corrections officers ordered him to put his shirt back on. Mr. Garrison states that he had removed his shirt in order to practice "sun meditation which is part of his native american spiritual beliefs." *Complaint*, ¶ 78. He filed a grievance against the officer, citing his right to practice his religion, under the First Amendment and RLUIPA. There followed several other instances where Mr. Garrison was ordered to put his shirt on despite his assertion that he was engaged in the spiritual practice of "sun meditation." Ultimately, on October 5, 2007, Mr. Garrison received a major misconduct ticket for disobeying a direct order to put his shirt on. *Id.* ¶¶ 79-94. On October 12, 2007, he was given a hearing on the misconduct ticket, and found guilty. *Id*. ¶ 96. Mr. Garrison alleges retaliation for exercising his constitutionally and statutorily protected right to practice his religion, and for filing grievances. *Id.*, Counts VII and VIII.

In the present motion for a temporary restraining order (TRO), Plaintiff Garrison alleges that he has an impending parole hearing, and that parole will be denied unless the major misconduct conviction is removed from his file. *Motion*, ¶¶ 3-4. He seeks a TRO "to enjoin the enforcement of the illegal major misconduct in this matter...." *Id.*, ¶ 4. He also asks the Court to "order the Defendants to provide him with one of the previous effective medications until the outcome of this litigation." *Id.*, p. 3 ("Relief Sought").

## II.    STANDARDS FOR GRANTING INJUNCTIVE RELIEF

Generally, in determining whether to grant injunctive relief, including a TRO, a court must examine and weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington-Fayette Urban County*

*Government*, 305 F.3d 566, 573 (6ᵗʰ Cir. 2002);  *McPherson v. Michigan High School*

*Athletic Ass'n*, 119 F.3d 453, 459 (6ᵗʰ Cir. 1997) (*en banc*).  "These factors are not

prerequisites, but are factors that are to be balanced against each other."  *Overstreet*, 305

F.3d at 573.

      Notwithstanding this balancing approach, however, the likelihood of success and

irreparable harm factors predominate.  Thus, "[a]lthough no one factor is controlling, a

finding that there is simply no likelihood of success on the merits is usually fatal."

*Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000);  *Michigan*

*State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general

matter, none of these four factors are given controlling weight, a preliminary injunction

issued where there is simply no likelihood of success on the merits must be reversed.").

      Plaintiffs bear the burden of demonstrating their entitlement to injunctive relief,

and their burden is a heavy one.  "A preliminary injunction is an extraordinary remedy

which should be granted only if the movant carries his or her burden of proving that the

circumstances clearly demand it."  *Overstreet , supra,* at 573.  "[T]he proof required for

the plaintiff to obtain a preliminary injunction is much more stringent than the proof

required to survive a summary judgment motion."  *Leary v. Daeschner*, 228 F.3d 729,

739 (6th Cir. 2000).  Thus, plaintiffs may not merely point to genuine issues of material

fact which exist, but must affirmatively demonstrate their entitlement to injunctive relief.

      Finally, Fed.R.Civ.P. 65(b) states that a TRO may be granted without notice to the

adverse party *only if* two conditions are met:

> "A temporary restraining order may be granted without written or oral
> notice to the adverse party or that party's attorney only if (1) it clearly
> appears from the specific facts shown by affidavit or by the verified
> complaint that immediate and irreparable injury, loss, or damage will result
> to the applicant before the adverse party or that party's attorney can be
> heard in opposition, and (2) the applicant's attorney certifies to the court in

writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required."

## III.   ANALYSIS

### A.   Likelihood of Success on the Merits

Plaintiff's claim is grounded in the Free Exercise Clause of the First Amendment and RLUIPA.  The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...."  The First Amendment is applicable to the States by virtue of its incorporation by the Fourteenth Amendment.  *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Prison inmates are entitled to the protection of the First Amendment, including the free exercise clause.  *O'Lone v. Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

However, an inmate's constitutionally protected rights, including his First Amendment rights, must be balanced against the institution's need to maintain security and order within the prison.  In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court held that  prison regulations may infringe on a prisoner's constitutional rights as long as they are rationally related to a legitimate penological concern.  *See also Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).  "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir.2003).

In the context of the First Amendment free exercise clause,  "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief

or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001), quoting *Kent v. Johnson,* 821 F.2d 1220, 1224 (6th Cir.1987). "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation." *Mosier v. Maynard, D.O.C.*, 937 F.2d 1521, 1526 (10th Cir. 1991), *citing Johnson v. Moore*, 926 F.2d 921, 923 (9th Cir. 1991).

A more stringent, less deferential standard is applied to an RLUIPA claim (the least restrictive means of furthering a compelling governmental interest) than to a First Amendment/§1983 claim (reasonably related to legitimate penological interests). *See Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). Under RLUIPA, the initial burden of showing a substantial burden on a religious practice lies with the Plaintiff. 42 U.S.C. § 2000cc-2(b). The burden then shifts to the government to demonstrate that the compelling interest test is satisfied. *See id.*

A governmental practice, decision or regulation imposes a "substantial burden" on the exercise of religion "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 569-70 (5th Cir. 2004). Stated differently by the Seventh Circuit, "a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise...effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

As with a First Amendment claim, the sincerity of the Plaintiff's beliefs forms part of an RLUIPA inquiry. *Cutter,* 544 U.S. at 725 n. 13; *Pugh v. Gord*, __F.Supp.2d__, 2008 WL 2967904, *20 (S.D.N.Y. 2008).

Whether analyzed under the First Amendment or RLUIPA, the Plaintiff's motion

leaves many questions unanswered.  This Court has been presented with nothing, other than the Plaintiff's representations, that "sun meditation" is a fundamentally religious practice, or that it is a "sincerely held belief," as opposed to "a case in which the plaintiff merely rest[s] upon an allegation of sincere religious belief."  *Mosier v. Maynard, supra*, 937 F.2d at 1527.  Furthermore, since Plaintiff has not served this Motion on any of the Defendants, the Court is without any information as to whether the "no shirt" regulation is reasonably related to a legitimate penological interest, or furthers a compelling state interest.  Based on the pleadings before the Court, the Plaintiff has fallen far short of affirmatively demonstrating his entitlement to relief.

### B.    Irreparable Harm

Plaintiff alleges, without any factual corroboration, that unless a TRO issues, he will be denied parole.  On the contrary, this Court has no idea what the Parole Board, which is vested with discretion to decide parole issues, will do.  Injunctive relief should not issue where the claimed irreparable damage is speculative or may never occur.  *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003).  Likewise, Plaintiff's claim that he will suffer irreparable harm to his health if his medications are not changed is, based on the information before the Court, highly speculative.

### C.    Harm to Others / Public Interest

These last two factors pertinent to injunctive relief may be viewed together.  The MDOC has an interest in promulgating and enforcing prison regulations, including reasonable rules involving prisoner health care and prison discipline. The public has an interest both in ensuring that prison inmates are afforded their constitutional rights, and also in having a well-regulated and operated prison system.  By granting injunctive relief in this case, the Court would be in the untenable position of second-guessing and

countermanding Defendant's medical decisions as well as the MDOC's  prison disciplinary policies, with no input from the MDOC.  Departments of Corrections are accorded considerable latitude in the administration of state prisons.  In *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 227, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the Supreme Court discussed the balancing of constitutional rights afforded prisoners against the deference that prison officials must be given in the efficient management of prisons: "Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators."  Again, this Court is ill-equipped to unilaterally micro-manage prison administration.  *Bruce v. Ylst, supra*.

### D.    Rule 65(b)

Finally, although Plaintiff brings this Motion under Rule 65, he has failed to comply with the two requirements for non-notice TROs set forth in Rule 65(b).  First, as discussed above, he has not articulated specific facts, either by affidavit or in his verified complaint, that he will suffer immediate and irreparable injury, loss or damage.  Secondly, he has completely failed to certify in writing any efforts he made at notice to the MDOC and why notice should not be required.

### IV.    CONCLUSION

For these reasons, I recommend that Plaintiff Michael Garrison's Rule 65 Motion for TRO [Docket #54] be DENIED.

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard*

*v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *and Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.

The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 17, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 17, 2008.

S/G. Wilson
Judicial Assistant