UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW CATANZARO and
MICHAEL GARRISON,                           No. 08-11173

                    Plaintiffs,             District Judge Thomas L. Ludington

v.                                          Magistrate Judge R. Steven Whalen

MICHIGAN DEPT. OF CORRECTIONS,
ET AL.,

                    Defendants.
_____ /

**REPORT AND RECOMMENDATION**

Before the Court are Defendants' Motion to Sever and/or Dismiss Plaintiffs'

Complaint [Docket #54], filed by Defendants Michigan Department of Corrections

("MDOC"), Patricia Caruso, Bruce Curtis, Jodi Nakata, Patricia Perrin, Vern Hankinson,

James Rice, James McHenry, David Smith, Joe Keinhans, Jack Stanley, Paul Lewis,

James Roth, Robin Stephens and Darlene Russell; and also Defendant Vercilla Hart's

Motion to Sever and/or Dismiss Plaintiff's Complaint [Docket #83], which adopts and

incorporates the motion filed by the other Defendants.  Patricia Caruso is the Director of

the MDOC, and the other individual Defendants are all MDOC employees.  The matter

has been referred for a Report and Recommendation pursuant to 28 U.S.C. §

636(b)(1)(B).

For the reasons set forth below, I recommend that the motions be GRANTED IN

PART AND DENIED IN PART, as follows:

(1) That Defendants' motion to dismiss Count I of the Complaint be GRANTED.

(2) That Defendants' motion to dismiss Count II of the Complaint be GRANTED.

-1-

(3) That the Defendants' motion to dismiss Count III of the Complaint, filed by Plaintiff Catanzaro against Defendant Kleinhans, be DENIED.

(4) That as to Count V, Defendant Smith's motion to dismiss be DENIED, but that the motion be GRANTED as to Defendant Rice.

(5) That the Defendants' motion to sever be GRANTED, and the remaining claims of the two Plaintiffs severed, one from the other, to proceed as separate actions.

## I.   FACTS

On March 19, 2008, Plaintiffs filed their complaint pursuant to 42 U.S.C. § 1983. The events giving rise to their complaint were alleged to have occurred when they were both prison inmates in the custody of the MDOC at the Cooper Street Correctional Facility in Jackson, Michigan. They were both subsequently transferred, Mr. Catanzaro to the Mid-Michigan Correctional Facility in St. Louis, Michigan, and Mr. Garrison to the Deerfield Correctional Facility in Ionia, Michigan.  As of today, Mr. Catanzaro is still at the Mid-Michigan Correctional Facility, but Mr. Garrison has been transferred to the West Shoreline Correctional Facility in Muskegon Heights, Michigan.

The complaint names 22 Defendants, and challenges numerous conditions of confinement alleged to violate the First, Eighth and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et.seq*.  Some of the allegations appear to pertain to both Plaintiffs, while others apply separately to either Mr. Catanzaro or Mr. Garrison.[1]  Paragraphs 3 through 14 of the Complaint contain general allegations regarding what are described as the squalid living conditions at the Cooper Street facility.  Plaintiffs allege a lack of ventilation in prisoner

---

[1] Defendants note that "[o]f these twenty-two Defendants, only six are common to both Plaintiffs." *Defendants' Motion*, Docket #54, p.2.

living areas, that has resulted in outbreaks of infectious diseases, and has caused the Plaintiffs to suffer "severe breathing difficulties," *Complaint*, ¶¶ 4-5; inadequate staffing, which has resulted in assaults, thefts and other crimes against inmates, *id*, ¶ 6; inadequate lighting and hygiene facilities, *id*, ¶ 7; inadequate amounts of food and space in the dining area, *id*, ¶ 8; inadequate enforcement of prisoner security classification rules, resulting in violent and dangerous prisoners being housed with low-security prisoners, *id*, ¶ 9; lack of jobs, psychological counseling and adequate medical care, *id*, ¶¶ 10-11; inadequate space in the law library, *id*, ¶ 12; and no shower curtains in the housing units, *id*, ¶ 14.

Plaintiff Catanzaro also makes claims related to his own conditions of confinement. He alleges that on August 29, 2007, Defendant Kleinhans, a maintenance worker, came within three inches of hitting him with a motorized cart. *Complaint*, ¶¶ 15-16. Plaintiff states that he "jumped to the side of the walk which caused extreme pain to his back just before he would of (sic) been hit." *Id.* ¶ 16. Catanzaro alleges that when he asked Kleinhans if he was going to hit him with the cart, Kleinhans answered, "Damn right you dumb motherfucker, get the fuck out of the way you stupid son-of-a-bitch." *Id.* ¶ 17. Catanzaro claims that he returned to his unit in severe pain, and was later seen by medical personnel, specifically, Defendant (Nurse) Dickens, Defendant (Nurse) Russell and Defendant (Physician's Assistant) Daoust.. *Id.* ¶¶ 18, 21-25.

Plaintiff Catanzaro alleges that Defendant Cotton[2], an MDOC grievance coordinator, rejected some of his grievances, and eventually placed him on "modified grievance access." *Id.* ¶¶ 27-30, 36-44. He states that on November 16, 2007, he filed a grievance complaining that his pizza was not big enough (it "measured 3 inches long and 2.5 inches wide that was clearly not the 6 oz. stated on the prison menu"), but received no

---

[2] Defendant Cotton is not part of the present motions.

response from Defendant Cotton.  *Id.* ¶ 46.

Catanzaro alleges that Defendant McHenry approached him on November 15, 2007, and demanded his prison I.D. card, stating, "Oh yeah, your (sic) the one I heard about writing all the grievances on our staff." *Id.* ¶ 47.  Catanzaro states that when told McHenry that he needed his I.D. to obtain his pain medication, McHenry replied, "I heard you are claiming that Joe tried to run you over, you can go without your medication tonight." *Id*. ¶ 49.

Catanzaro claims that on September 13, 2007, he told Defendant Hankinson, a Unit Officer, that he was experiencing severe back pain. After making some telephone calls, Hankinson related that he had talked to Nurse Sherrie Robbins, who requested that Catanzaro write a health care kite and send it in. Catanzaro was not examined that night. *Id*. ¶ 52.  Catanzaro alleges that on September 27, 2007, Defendant (Nurse) Jody Dickens told him that in fact, Nurse Robbins instructed Hankinson to send him to Duane Waters Hospital.  *Id.* ¶ 64.

Catanzaro alleges that on September 21, 2007, Defendant (Corrections Officer) D. Smith called his name over the unit intercom, telling him to report to the officer's station because "the feds were waiting up at the control center to talk to him."  *Id.* ¶ 55. When Catanzaro asked Smith what he was talking about, Smith allegedly said, in the presence of approximately 10 other prisoners, "Get dressed in your prison blues cause the feds are waiting to talk to you up front."  Catanzaro states that one of the other prisoners asked, "What do the feds talk to inmates about?", and another prisoner answered, "He's a rat." *Id.* ¶ 55.  Catanzaro states that the next day, he overheard another prisoner saying that he "may be wearing a wire or be a snitch for the feds."  *Id.* ¶ 59.  Catanzaro alleges that he had to fight several prisoners "who thought he was a snitch for the FBI."  *Id*. ¶ 60.

Plaintiff Garrison alleges that when he sought decongestant medication for his chronic sinusitus/rhinitis condition, he was "forced to take non-decongestant medications such as CTM's and antibiotics and nasal sprays, and claritin which never worked." *Id.* ¶ 70. He states that on August 30, 2007, Defendant Dickens indicated to him that "no prescription sinus medication is available anymore." *Id.* ¶ 71. Between September and November of 2007, Garrison was seen several times by medical personnel, including Defendants Dickins, Russell, Daoust, Hart, Hense and Russ. *Id.* ¶ 73-77.

Finally, Plaintiff Garrison alleges that Defendants Smith, Stanley, Lewis and Roth prohibited him from performing Sun Meditation, a Native American spiritual exercise which involves "merely removing his shirt, shoes and socks to have direct contact with the sun and meditating." *Id.* ¶ 78-94. Garrison claims that he received a major misconduct ticket for disobeying a direct order (to put his shirt back on), and was threatened with segregation if he did not stop his "meditation." *Id.* ¶¶ 92-94.

In Count I of their Complaint, Plaintiffs allege Eighth Amendment violations against Defendants MDOC, Caruso, Curtis, Perrin and Rice, based on the allegations that the Plaintiffs were "deprived of basic human needs," as set forth in ¶¶ 1-14.

In Count II, Plaintiffs claim Eighth Amendment violations against Defendants Daoust, Dickens, Robbins, Hankison, Russell, MDOC and Russ, based on deliberate indifference to serious medical needs.

In Count III, Plaintiff Catanzaro claims an Eighth Amendment violation against Defendant Kleinhans, based on the alleged assault with a motorized cart.

In Count IV, Plaintiff Catanzaro raises a First Amendment retaliation claim against Defendants Curtis, Cotton and McHenry.

In Count V, Plaintiff Catanzaro raises an Eighth Amendment claim and a First

Amendment retaliation claim against Defendants D. Smith and Rice, based on the allegation that he was implicitly labeled an F.B.I. "snitch."

In Count VI, Plaintiff Garrison raises a First Amendment Free Exercise claim and an RLUIPA claim against Defendants Smith and Stanley.

In Count VII, Plaintiff Garrison raises First Amendment Free Exercise and RLUIPA claims against Defendants Roth, Lewis, Zeller and Curtis, as well as a First Amendment retaliation claim.

In Count VIII, Plaintiff Garrison raises a retaliation claim against Defendants Cotton and Stephens, based on their alleged failure "to remove grievance information from his prison file in order to punish him for filing a grievance."

In Count IX, Plaintiff Garrison alleges a Fourteenth Amendment Due Process claim against Defendant Curtis, based on the allegation that Curtis "illegally deduct[ed] his good time credits."

Plaintiffs name all Defendants in both their individual and official capacities, and seek monetary and injunctive relief.

In their motions, Defendants seek to dismiss Counts I, II, III and V under Fed.R.Civ.P. 12(b)(6), and/or to sever claims of these two Plaintiffs pursuant to Fed.R.Civ.P. 21.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted."  Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)."  In

-6-

assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001).

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[3] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937,__L.Ed.2d__ (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[4] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. At 1949, citing *Twombley*,

---

[3] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

[4] *Twombley* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

550 U.S. at 555.  Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]'–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950(Internal citations omitted).

## III.    ANALYSIS

The Defendants ask for dismissal of the Plaintiffs' claims or, in the alternative, severance.  Because some of the Plaintiffs' claims are subject to dismissal under Rule 12(b)(6) and some are not, it will simplify matters to dispose of the motion to dismiss before analyzing the issue of severance.

### A.    Motion to Dismiss

### 1.    Count I–Eighth Amendment

In Count I, Plaintiffs allege horrendous prison conditions, including overcrowding, inadequate sanitary facilities, inadequate staffing, and poor ventilation.  They complain that in general, the conditions have resulted in inmates not getting adequate food, and "[have] also resulted in several prisoner stabbings, assaults, sexual assaults, and rampant thefts."  *Complaint*, ¶¶ 8-9.  Although both Plaintiffs allege that the lack of ventilation "has caused the Plaintiffs severe breathing difficulties," *id*. ¶ 5, they do not claim that they themselves have been victims of stabbings, thefts or other misfortunes that have allegedly befallen their fellow inmates as a result of poor prison conditions.

The Plaintiffs' request for injunctive relief as to Count I must be dismissed as moot, since both Plaintiffs have been transferred to different prisons.  Mr. Garrison has been transferred twice.  The Plaintiffs have not *plausibly* shown, beyond speculation, that

the conditions at *all* Level I (or Secure Level I) facilities are the same as they allege they were at Cooper Street. *Iqbal v. Ashcroft, supra.* Indeed, they clearly have not been housed at all Level I or Secure Level I facilities. Even assuming the truth of their allegations regarding the conditions of confinement at Cooper Street, the Plaintiffs' transfer to other institutions renders their request for injunctive relief moot. *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996) (holding prisoner's claim for injunctive and declaratory relief mooted by his transfer to new facility).

I reject Plaintiffs' argument that their claim for injunctive relief is not moot "because they could be transferred back to the...Cooper Street prison at any time." *Plaintiff's Response,* Docket #62, p.4. The case they rely on, *McKinney v. Maynard*, 952 F.2d 350 (10th Cir. 1991), has been overruled. *See McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999). There, the court noted that the possibility that the prisoners might be transferred back to the original prison was too speculative to justify injunctive relief. *See also Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003) (injunctive relief should not issue where the claimed irreparable damage is speculative or may never occur).[5]

As to any claim for monetary damages arising out of the Plaintiffs' residence at Cooper Street, they have not alleged that they themselves suffered any harm. They state that there have been assaults, rapes, lack of food and inadequacy of sanitary facilities (e.g., no shower curtains), but have not alleged that they were harmed by these conditions. They do make a vague allegation that the lack of ventilation caused "severe

---

[5] On July 14, 2009, this Court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction regarding the claims in Count I. *See* Docket #114.

breathing difficulties," but do not claim to have suffered any particular harm as a result.[6] The Eighth Amendment does not remedy non-existent or *de minimis* harm. *See Dean v. Conley*, 20 Fed.Appx. 294, 296, 2001 WL 1141330, *2 (6th Cir. 2001) ("The Constitution, however, does not provide an avenue of redress for de minimis events in the life of an inmate").

Therefore, Count I should be dismissed in its entirety.

## 2.    Count II–Deliberate Indifference

Here, both Plaintiffs claim deliberate indifference to their medical needs.

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by showing an interruption of a  prescribed plan of treatment, or a delay in medical treatment.  *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

_____

[6] In ¶ 5 and elsewhere in the Complaint, Plaintiff Garrison claims that he suffers from chronic sinusitis, but attributes his difficulties to the inadequacy of medical treatment and the failure of prison authorities to provide the proper medication, not to the lack of ventilation.  In fact, Garrison states that his sinusitis predates the filing of the Complaint by 20 years.  *Complaint*, ¶ 69.

However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703.

In Count II, Mr. Catanzaro specifically relies on ¶¶ 23-27, 53-54 and 64-65 of the Complaint. The allegations in those paragraphs are insufficient on their face to make out a claim of deliberate indifference. He states that on August 30, 2007, after his back injury, he was seen by Defendant Russell, a nurse, regarding a different problem, but explained the back situation to her. *Complaint*, ¶ 23. Russell agreed to refer the matter to Physician's Assistant Daoust the next day, and provided Catanzaro with ten 325 mg. aspirin pills for pain. *Id.* Catanzaro was in fact seen by P.S. Daoust the next day. *Id.* ¶ 24. While Plaintiff alleges that Daoust was rude and dismissive, the P.A. provided extra pillows, with instructions on how to place them under the legs while sleeping, along with instructions for back exercises. Daoust further indicated that Plaintiff's excessive weight and eating habits contributed to his back problems. *Id.* ¶ 24-25. Daoust also drew blood, apparently to check Plaintiff's cholesterol levels.  *Id.* ¶ 26.

Thus, Catanzaro concedes that Defendants Russell and Daoust both examined him and provided treatment. Assuming the Plaintiff meets the first prong of a deliberate indifference claim–a "sufficiently serious" medical issue–he has not shown, under the second prong, that Russell and Daoust disregarded that problem. Although Catanzaro apparently disagrees with the level and quality of treatment he was given, the Eighth Amendment does not permit this Court to second-guess medical judgments or diagnoses. At most, Plaintiff brings a claim of medical negligence or malpractice, not deliberate indifference. *Estelle, supra*, recognized that differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim. *Id.*, 429 U.S. at 105-06. *See also*

*Westlake v. Lucas,* 537 F.2d 857, 860 at n. 5 (6th Cir.1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

Catanzaro also brings a deliberate indifference claim against Defendant Hankinson, who allegedly refused to have him taken to the hospital when he complained of back pain on September 13, 2007. *Complaint*, ¶ 52. Catanzaro alleges that later, a nurse told him that Nurse Robbins had in fact instructed Hankinson to have him taken to Duane Waters Hospital. *Id.* ¶ 64. Under *Iqbal*, this claim lacks plausibility. While Catanzaro claims that he had severe back pain, he has not alleged or shown that on September 13th, this was a life or permanent health threatening situation. According to Catanzaro, Hankinson told him on September 13th that Nurse Robbins requested a health care kite, which would be the usual protocol for a non-life threatening condition, particularly one for which Plaintiff had previously been examined and treated. Moreover, it is not plausible that in such a situation, a nurse would order the Plaintiff taken immediately to an outside hospital without first examining him. Finally, the Plaintiff does not allege that he ever submitted a health care kite pursuant to Hankinson's instructions, or that he was subsequently found to have a condition that required hospitalization or outside medical treatment.

Plaintiff Catanzaro's deliberate indifference claims in Count II should therefore be dismissed.

Plaintiff Garrison claims deliberate indifference to his medical needs by Defendants Dickens, Russell, Daoust, Hart and Russ. He specifically alleges that he was given medications that proved ineffective to relieve his symptoms, rather than

medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine. *Complaint*, ¶¶ 69-77. Significantly, Garrison does not claim that he was not examined or that he received no treatment at all; rather, he disputes the efficacy of his treatment, and expresses disagreement with the medical personnel as to the type of medications that were provided. Again, disputes over the adequacy of treatment might or might not sound in state malpractice law, but find no remedy under the Eighth Amendment. *Westlake v. Lucas, supra.* Garrison's deliberate indifference claims in Count II should therefore be dismissed as well.

### 3.    Count III: Eighth Amendment–Excessive Force

Plaintiff Catanzaro alleges that Defendant Kleinhans subjected him to excessive force, in violation of the Eighth Amendment, by attempting to run him over with a motorized cart, resulting in a back injury when Catanzaro was forced to jump out of the way.

Claims of excessive force against convicted prisoners by prison guards are analyzed under the Eighth Amendment's cruel and unusual punishment clause. *Cornwell v. Dahlberg,* 963 F.2d 912, 915-916 (6th Cir.1992). In *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the Supreme Court held that what is necessary to establish unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. 475 U.S. at p. 320. It concluded that "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21

*Whitley* arose out of a prison disturbance situation. In *Hudson v. McMillian,* 503 U.S. 1,

-13-

112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Court extended the rule to single-prisoner incidents. ("[W]e hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."). *Id*. at 6.

To sustain an Eighth Amendment/Excessive Force claim, a prisoner must ordinarily show more than a *de minimis* injury. *Id*. at 9-10; *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999)(en banc). However, where force is maliciously or sadistically applied, no injury need be shown. In *Hudson*, the Court explained:

> "Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur' .... In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' *The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it .... When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated .... This is true whether or not significant injury is evident*." *Hudson*, 503 U.S. at 7 (emphasis added).

Viewing the allegations in ¶¶ 15-17 of the Complaint in the light most favorable to Plaintiff Catanzaro, Defendant Kleinhans admitted that he deliberately attempted to hit the Plaintiff with the motorized vehicle, not in order to further any legitimate penological goal, but because he thought Plaintiff was in his way. Although Catanzaro makes a claim of back injury that on the face of the Complaint is more than *de minimis*, Kleinhans' alleged actions in trying to hit the Plaintiff, and telling him to "get the fuck out of the way you stupid son-of-a-bitch," *Complaint*, ¶ 17, violate contemporary standards of decency without regard to whether an actual injury ensued.

-14-

Defendant Kleinhans may or may not be entitled to summary judgment following discovery; the resolution of that issue is premature. However, under the strictures of Rule 12(b)(6), Plaintiff Catanzaro has adequately stated an Eighth Amendment claim upon which relief can be granted. Therefore, the motion to dismiss Catanzaro's claims in Count III must be denied.

### 4.    Count V: Eighth Amendment

In Count V, Plaintiff Catanzaro alleges violation of his Eighth Amendment protections based on Defendant Smith's labeling him a "snitch," or police informant. *Complaint*, ¶¶ 55-60.  He also claims that Defendant Rice, an Assistant Deputy Warden ("ADW"), decided to keep him at the Cooper Street facility, rather than transferring, him, "so that certain correction officers could retaliate against him too deter other prisoners from filing grievances."  *Id.* ¶ 62.

The Eighth Amendment protects an inmate from prison officials' deliberate indifference to a substantial risk of serious harm to that inmate.  *Farmer v. Brennan, supra*.  In *David v. Hill,* 401 F.Supp.2d 749 (S.D.Tex.2005), the court noted a long line of cases recognizing the dangers of a prison inmate being labeled a "snitch," and the resulting "threat to an inmate's health and safety in violation of the Eighth Amendment." *Id.,* at 756-57. The court suggested that "[b]ecause being labeled a snitch could place an inmate's life in danger, it follows that he would have a protected interest in not being labeled one."  *See also Benefield v. McDowall,* 241 F.3d 1267, 1271 (10th Cir.2001) ("labeling an inmate a snitch satisfies the *Farmer* standard and constitutes deliberate indifference to the safety of that inmate"); *Comstock v. McCrary, supra*, 273 F.3d at 699 n.2 (6th Cir.2001) (acknowledging that "[b]eing labeled a 'snitch' was dreaded, because it could make the inmate a target for other prisoners' attacks").

-15-

Numerous cases have held that under the Prison Litigation Reform Act ("PLRA"), an Eighth Amendment deliberate indifference claim must be grounded in an actual physical injury. *See Gibbs v. Ball*, 2009 WL 331604, *4 (E.D.Mich. 2009)(no Eighth Amendment violation where plaintiff was labeled a "rat," but did not show actual physical injury); *Saunders v. Tourville,* 97 Fed.Appx. 648 (7th Cir.2004) (no Eighth Amendment claim for an inmate who suffers only the risk of physical harm). In the present case, although Plaintiff has not alleged a specific physical injury, he does claim that as the result of his public labeling as a "snitch," he was forced to fight other inmates. *Complaint*, ¶ 60. While the PLRA does not permit an inmate to recover Eighth Amendment damages for purely emotional trauma, he should not be denied a cause of action if, as a result of wrongfully being labeled a "snitch," he is forced to fight off other inmates who are trying to inflict physical damage on him. Being put in a position where he has to fight is a sufficient physical consequence to withstand scrutiny under the PLRA, and indicates a substantial and proximate exposure to physical danger. *See Doe v. Magnuson,* 2005 WL 758454, *15-16 (D.Me.2005)(Eighth Amendment claim based on labeling prisoner a "snitch" requires a showing of a substantial threat of danger).

Therefore, drawing all permissible inferences in Plaintiff Catanzaro's favor, Defendants' Rule 12(b)(6) motion to dismiss this Eighth Amendment deliberate difference claim against Smith should be denied.

However, Plaintiff has not stated a viable claim against ADW Rice. In Count V, Catanzaro specifically relies on the factual allegations in ¶¶ 55-62. In ¶ 62, he alleges that on October 2, 2007, ADW Rice wrote a memorandum to the Warden, Defendant Bruce Curtis, indicating that he was going to keep Catanzaro at the Cooper Street

-16-

facility.[7]  Plaintiff states at ¶ 62 that he "*believes* the reason" that Rice wrote this memorandum "was so that certain correction officers could retaliate against him to deter other prisoners from filing grievances."  He alleges no facts to show, beyond a purely speculative level, that Rice took any adverse action in order to retaliate against him for engaging in protected conduct.  *Thaddeus-X, supra*.  Indeed, Catanzaro *has* been transferred.  Because Plaintiff's claim against Rice in Count V is speculative and implausible, it must be dismissed under Rule 12(b)(6).

### B.    Motion for Severance

Based on the above Rule 12(b)(6) analysis, the following claims survive:

Plaintiff Catanzaro

Count III:  An Eighth Amendment excessive force claim against Defendant Kleinhans.

Count IV (not challenged in this motion): A First Amendment retaliation claim against Defendants Curtis, Cotton and McHenry.

Count V: An Eighth Amendment claim against Defendant Smith.

Plaintiff Garrison

(None of these remaining claims are challenged in the present motion)

Count VI: A First Amendment and RLUIPA claim against Defendants Smith and Stanley.

Count VII: A First Amendment, RLUIPA and retaliation claim against Defendants Roth, Lewis, Zeller and Curtis.

Count VIII: A retaliation claim against Defendants Cotton and Stephens.

---

[7] In ¶ 39, Catanzaro referred to the communication between Rice and Curtis only in regard to his placement on modified grievance access.

Count IX: A Fourteenth Amendment Due Process claim against Defendant Curtis.

Under these circumstances, there has been a misjoinder of parties, and the Defendants' request for severance should therefore be granted.

Fed.R.Civ.P. 20 (Permissive Joinder) provides as follows:

"**(a) Persons Who May Join or Be Joined.**

**(1) *Plaintiffs.*** Persons may join in one action as plaintiffs if:

**(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

**(B)** any question of law or fact common to all plaintiffs will arise in the action.

**(2) *Defendants.*** Persons--as well as a vessel, cargo, or other property subject to admiralty process in rem--may be joined in one action as defendants if:

**(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

**(B)** any question of law or fact common to all defendants will arise in the action."

Given that Count I is dismissible, there is a clear misjoinder of Plaintiffs.[8]  Their surviving claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences.  Nor are there common questions of law or fact common to both Plaintiffs. Catanzaro's excessive force and deliberate indifference claims have nothing to do with Garrison's First Amendment and RLIUPA claims.  They arise out of

---

[8] Plaintiffs suggest that joinder is appropriate because they seek to bring this case as a class action.  However, class certification was denied on July 14, 2009. *See* Docket #115.

different facts and involve different Defendants.  And while both Plaintiffs raise retaliation claims involving Defendant Cotton, the factual predicates for those claims are completely different.

Likewise, except for Cotton, the Plaintiffs name entirely different Defendants in their respective claims, and there are no common questions of law or fact that would permit joinder of Defendants under Rule 20(a)(2).

Fed.R.Civ.P. 21 provides:

"On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

The district court has broad discretion in ruling on a motion brought under Rule 21. *Glendora v. Malone*, 917 F.Supp. 224, 227 (S.D.N.Y. 1996).  Because these two Plaintiffs have unrelated claims against different Defendants, their claims should be severed, and the Plaintiffs' respective claims should proceed as separate actions. *Houston v. URS Corp.*, 591 F.Supp.2d 827, 837 (E.D. Va. 2008)

## IV.   CONCLUSION

For these reasons, I recommend that Defendants' Motions to Sever and/or Dismiss [Docket #54 and #83] be GRANTED IN PART AND DENIED IN PART, as follows:

(1) That Defendants' motion to dismiss Count I of the Complaint be GRANTED.

(2) That Defendants' motion to dismiss Count II of the Complaint be GRANTED.

(3) That the Defendants' motion to dismiss Count III of the Complaint, filed by Plaintiff Catanzaro against Defendant Kleinhans, be DENIED.

(4) That as to Count V, Defendant Smith's motion to dismiss be DENIED, but that

-19-

the motion be GRANTED as to Defendant Rice.

(5) That the Defendants' motion to sever be GRANTED, and the remaining claims of the two Plaintiffs severed, one from the other, to proceed as separate actions.

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
UNITED STATES MAGISTRATE JUDGE

Dated:  August 31, 2009

-20-

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 31, 2009.

s/Susan Jefferson                                    
Case Manager